UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CLETUS GRANNAN | ) | |
| | ) | |
| v. | ) | NO. 1:06-CV-46 |
| | ) | (CR. 1:04-CR-136) |
| UNITED STATES OF AMERICA | ) | *Curtis L. Collier, Chief Judge* |

**MEMORANDUM OPINION**

Cletus Grannan, a federal inmate, brings this *pro se* motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, challenging the constitutionality of his confinement under a 2005 judgment of this Court. Pursuant to his plea of guilty, the Petitioner was convicted of conspiring to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846; § 841(a)(1); and § 841(b)(1)(A). For this offense he was sentenced to 70 months of imprisonment and five years of supervised release.

Petitioner did not pursue a direct appeal, but instead, filed this instant motion, alleging ineffective assistance of counsel at sentencing, ineffective assistance as cause for any procedural default which occurred, and actual innocence of his sentence. The United States has filed a response, arguing that Petitioner's claims have no merit and that his § 2255 motion should be dismissed.

**I.**   *Factual Background*

Petitioner pleaded guilty to Count one of a 7-count indictment charging him and four co-defendants with drug-related offenses. Supporting his plea to the § 841(a)(1) violation were certain

parts of the government's proposed factual basis [Ct. File No. 82], to which Petitioner orally agreed during the change of plea hearing on February 3, 2005. This document shows, and Petitioner acknowledged, on numerous occasions from November 2003 through March 2004, he and a co-defendant traveled to the Atlanta, Georgia area to obtain more than 500 grams of methamphetamine from a source known to them as "Jeremy" and transported it to Eastern Tennessee. Most of the substance was distributed in Bradley County, Tennessee. Petitioner dispensed more than 50 grams of methamphetamine to the second co-defendant, including a small quantity of "ice" methamphetamine found during a search of the co-defendant's home, and 10 grams of methamphetamine to a third co-defendant.

Furthermore, from 1993 to late in 2003, Petitioner acquired more than fifty kilograms (110 pounds) of marijuana from the third co-defendant and, during the first two months of 2004, approximately 50 kilograms (approximately one pound) of marijuana from the fourth co-defendant. In Petitioner's absence, his home was searched, pursuant to a warrant,[1] and found there were a quantity of methamphetamine, digital scales, numerous empty baggies, and forty-four firearms. Among the firearms were many long guns, several semi-automatic handguns, and several loaded weapons. Thereafter, Petitioner pleaded guilty, without a plea agreement, and proceeded to sentencing.

---

[1] The information in this paragraph was included in a supplement to the proposed factual basis. [Ct. File No. 94 in the criminal case]. This document provides March 29, *2001*, as the date of the search, but, apparently, this is a typographical error. The "Offense Conduct" section of the presentence report, which describes the search of Petitioner's residence, lists the search as occurring on March 29, 2004.

In preparing the presentence report ["PSR"], the probation officer calculated that, under the 2004 United States Sentencing Guidelines ("USSG"), Petitioner's base offense level was 34. She arrived at this offense level by adding the amount of methamphetamine Petitioner admitted or pled guilty to distributing [500 grams] to the amount of methamphetamine and marijuana he had acknowledged in his statement to law enforcement officials. After a USSG §2D1.1(b)(1) two-level increase for possession of a dangerous weapon and a three-point reduction for acceptance of responsibility under § 3E1.2(a) and (b), Petitioner's total offense level was 33, which, with a criminal history category of one, resulted in a guideline range of 135 to 168 months. Of course, because of the firearm enhancement, Petitioner did not qualify for safety valve consideration.[2] And too, he was subject to a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)

Petitioner filed two objections to the PSR. In the first of these, he argued that information he had supplied pursuant to a cooperation agreement with the government had been used impermissibly to reach a base offense level of 34. At the sentencing hearing, the government conceded this point and, after a suitable inquiry into the matter, the Court concluded there was a cooperation agreement between the parties; sustained Petitioner's objection; and determined the drug amounts to which Petitioner had admitted in his statement would be excluded from the calculation. Without the prohibited drug quantities, Petitioner's base offense level was lowered to 32.

---

[2] To qualify for the safety-valve exception to mandatory minimum sentencing, defendants must satisfy the five following criteria: they cannot have more than one criminal history point; they cannot have used violence or credible threats of violence or possessed a firearm or other dangerous weapon in connection with the offense; their offense cannot have resulted in death or serious bodily injury to anyone; they cannot have been an organizer, leader, manager or supervisor of others in the offense; and they have to have truthfully provided all the information and evidence concerning the offense. 18 U.S.C. § 3553(f)(1) - (5); USSG § 5C1.2.

Petitioner also objected to the firearms enhancement, but withdrew the objection during the hearing. The Court found the PSR contained an accurate reflection of the facts and that its calculation of the applicable guidelines, with one exception, was likewise accurate. As to that exception, with the new base level offense of 31 and a category one criminal history, the guideline range became 120 to 135 months.

The government then moved, under § 5K1.1, for a downward departure based on Petitioner's substantial assistance.[3] The United States outlined the risky nature and enormous extent of that assistance; characterized Petitioner's help as the *sine qua non* of the prosecution of his codefendants, who, in turn, gave the authorities information on other crimes; and asked the Court to consider all this in fixing his sentence.

Noting that a two-level downward departure was warranted in cases where it is crystal clear a defendant has helped the government in the investigation and prosecution of others, the Court recognized the degree of assistance Petitioner had given the government was quite extraordinary and rewarded him with a four-level downward departure, leaving his total offense level at 27. This offense level carries a guideline range of 70 to 87 months. After hearing arguments as to the appropriate sentence to impose in Petitioner's case and considering factors such as the sentencing

---

[3] The Court, at this point, upon learning, though their culpability was equal, Petitioner's co-defendants' guideline range was lower than his and they had received lesser sentences than his was likely to be, decided to continue the hearing to permit the parties to inquire about the apparent disparity in sentencing. Two weeks later, when the hearing resumed, the difference in the sentences was attributed to Petitioner's two-point enhancement for the firearm and the bar to safety valve consideration posed by the firearm. Had Petitioner been eligible for safety valve sentencing, 18 U.S.C.§ 3553(f), this would have decreased his guideline sentence by two points and, at the same time, authorized a sentence below the minimum mandatory 10-year sentence required by his statute of conviction. 21 U.S.C. § 841(b)(1)(A).

4

range, the advisory character of the guidelines, and the sentencing goals in 18 U.S.C. § 3553(a), the Court sentenced Petitioner to seventy months– the lowest possible sentence in his guideline range and well below his statutory minimum.

**III.**   *Standards of Review*

To seek relief under § 2255, a prisoner "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir.2003) (citation omitted).  A petitioner can be granted § 2255 relief on the basis of a constitutional error which had a substantial and injurious effect or influence on the proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994).  A prisoner who is seeking to obtain collateral relief must clear a "significantly higher hurdle" than would exist on direct appeal.  *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Under Rule 8 of the RULES GOVERNING SECTION 2255 PROCEEDINGS IN THE UNITED STATES DISTRICT COURTS, a court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required.  If the motion to vacate, the answer and the records of the case show conclusively a petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing.  *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).  The Court finds no need for an evidentiary hearing in this matter.

**IV.**   *Discussion*

Petitioner was represented at the outset of the proceedings by a court-appointed attorney, Barry L. Abbott, of Chattanooga, Tennessee. Mr. Abbot developed a conflict of interest and was replaced by a retained attorney, Brian Hoss. Petitioner apparently has no quarrel with the way Mr. Abbot handled his case, but does charge Mr. Hoss with three failings with regard to his sentencing.

Petitioner first contends Mr. Hoss should have not withdrawn his objection to the firearms enhancement at sentencing, but, instead, should have argued Petitioner's possession of the firearms at his home was perfectly legal. Second, he would have had Mr. Hoss argue the firearms were not stored anywhere near the illicit drugs. Petitioner maintains Mr. Hoss missed the mark again by failing to object to the firearm enhancement on the basis it violated his right to have the indictment charge him with the possession of firearms and to have the jury so find beyond a reasonable doubt. This third shortcoming, according to Petitioner, has caused an unlawful sentence to be imposed on a man who is actually innocent of illegal firearm possession.[4]

A. **Applicable Law**

The United States Supreme Court has established a two-part test for determining when assistance of counsel is ineffective. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, the petitioner must show his counsel's errors were so egregious as to render counsel's performance constitutionally deficient – that is, outside the "wide range of professional assistance." *Id.*, at 687; *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996). The alleged errors or omissions must

---

[4] Petitioner's last contention is that Mr. Hoss's failures have reverberated into the post-conviction arena, i.e., his confinement conditions, since the firearm enhancement precludes his enrollment in a drug program which would lead to a reduced sentence. However, a federal prisoner's conditions-of-confinement claim must be brought in a § 2241 petition, not in a § 2255 motion, and it must be filed in the district where the inmate is confined. *United States v. Jalili*, 925 F.2d 889, 893-94 (6th Cir. 1991).

be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland* at 689. Second, Petitioner must show his counsel's deficient performance so prejudiced him that the result is unreliable. *Id.*, at 687. As the Supreme Court explained, in order to show counsel's performance was deficient, petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*, at 689.

In addition to deficient performance, a petitioner must also show actual prejudice. In the context of a guilty plea, a petitioner will satisfy the prejudice prong of the *Strickland* test if he shows, but for counsel's errors, he would not have pleaded guilty but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). Failure to object to an enhancement at sentencing may constitute ineffective assistance. *United States v. Otero*, 502 F.3d 331, 336-337 (3rd Cir. 2007); *United States v. Franks*, 230 F.3d 811, 814-15 (5th Cir. 2000).

B.   **Analysis**

The claims are addressed separately.

   1. *Dangerous-Weapon Enhancement.*

As noted previously, numerous firearms were found during the search of petitioner's residence and he received a two-point upward adjustment to his sentence under USSG. § 2D1.1(b)(1) for possessing a dangerous weapon during the offense. Petitioner now suggests his attorney should have challenged the adjustment by arguing he owned the firearms legally and they were not used in connection with or stored near any drugs.

7

To support a § 2D1.1(b)(1) enhancement, the government must show, by a preponderance of evidence: 1) a petitioner possessed a dangerous weapon 2) during the commission of a drug-trafficking offense. *United States v. Hill,* 79 F.3d 1477, 1485 (6th Cir. 1996). Possession may be actual or constructive, *United States v. Solorio,* 337 F.3d 580, 599 (6th Cir.), *cert. denied*, 540 U.S. 1063 (2003), and the latter type of possession may be proven by circumstantial evidence. *United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002). Upon proof of these two elements, a rebuttable presumption arises that the weapon was connected to a drug-trafficking crime. *United States v. Sanchez,* 928 F.2d 1450, 1460 (6th Cir.1991). This presumption can be defeated only if a defendant demonstrates it is "clearly improbable that the weapon was connected to the offense." U. S. Sentencing Guidelines Manual §2D1.1 comment. n. 3. And, the "clearly improbable" burden is a difficult burden to meet. *United States v. Johnson*, 344 F.3d 562, 567 (6th Cir. 2003).

Here, the government would have had no trouble proving the possession element since forty-four firearms, some of which were loaded, were found in Petitioner's residence, along with a quantity of "ice" methamphetamine, and since those weapons were possessed while petitioner engaged in the methamphetamine-dealing conspiracy. *See Sanchez*, 928 F.2d at 1460 (ruling that a weapon is possessed within the terms of § 2D1.1(b)(1) if a defendant owns or controls the weapon itself or the premises where it is located). *See also United States v. Faison*, 339 F.3d 518, 520 (6th Cir. 2003) (It is unnecessary to show a firearm was possessed during the commission of an offense, but only that it was possessed during "relevant conduct," which is defined as "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction").

Petitioner's suggestion that his attorney should have argued the firearms were legally owned is rejected. This argument would have had no effect on the possession element because a legally-owned weapon, even if utilized for legitimate purposes, may be used also in drug-trafficking activity. *United States v. Davidson*, 339 F.3d 518, 520 (6th Cir. 2003).

Because the presumption arises upon proof of both elements, Petitioner would have had to make the difficult showing it was "clearly improbable that the weapon was connected to the offense." He makes no attempt to satisfy this standard, and the Court sees nothing in the record which would otherwise meet Petitioner's burden. Because Mr. Hoss is not charged with making an argument or an objection which is doomed to fail, he did not give Petitioner ineffective assistance in this instance. *See Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986) (counsel not obliged to present a baseless defense or create one which does not exist).

      2. *The Jury-Right claim.*

Petitioner maintains the two-point addition to his sentence was based on the uncharged and judicially-found fact that he possessed a dangerous weapon during the offense and this violates his right to have a jury determine, beyond a reasonable doubt, any fact which increases his sentence above the statutory maximum. *See* U.S. CONST. amend. VI. In support of his claim, Petitioner cites to three cases, the first of which is *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Supreme Court held: "[O]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Secondly, he relies upon *Blakely v. Washington*, 454 U.S. 296 (2004), for its ruling that the Sixth Amendment right to a trial by jury, as explained in *Apprendi,*

also applies to an increase in a sentence, under state sentencing law, based on facts found by a judge, where the facts admitted in a defendant's guilty plea, standing alone, supported a much lower maximum sentence. Finally, Petitioner points to *United States v. Booker*, 543 U.S. 220 (2005), where the *Blakely* reasoning was applied to the Federal Sentencing Guidelines.

As the United States correctly argues in its brief, this claim is not countenanced by the law. The United States Court of Appeals for the Sixth Circuit has stated:

> This court has squarely rejected defendants' contention that *Booker* and *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004), require all factual findings affecting a sentence's severity to be made by a jury beyond a reasonable doubt. In *United States v. Cook,* 453 F.3d 775, 777 (6th Cir.2006), this court explained that "[*Booker*] has no bearing on advisory guideline calculations," but, instead, applies only to judicially found facts used "to impose a mandatory enhancement." Where, as here, a district court understands that the Guidelines are only advisory, judicial fact-finding done by the preponderance of the evidence is permissible. As we stated in *United States v. Mickens,* 453 F.3d 668, 673 (6th Cir.2006) (collecting cases), "[b]y now, it is well established that the preponderance standard does not violate *Booker,* so long as the trial court appreciates that the guidelines are advisory, not binding." *See also United States v. Stone,* 432 F.3d 651, 654-55 (6th Cir.2005) (" *Booker* did not eliminate judicial fact-finding"). Moreover, nothing in the Supreme Court's recent ruling in *Rita v. United States,* ___ U.S. ___, 127 S. Ct. 2456, 168 L. Ed.2d 203 (2007), changes our understanding.

*United States v. Sexton*, 512 F.3d 326, 329 -330 (6th Cir.2008).

In Petitioner's case, referencing *Booker*, the Court explicitly observed, during his sentencing, the guideline range was not mandatory, but merely advisory, and was not binding on the Court. [Ct. File No. 165, Sent. Tr., at 7 in the criminal case.] The above quoted case law shows this claim to be baseless. There was no ineffective assistance. *See United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991) (failure to make arguments that "are clearly destined to be unsuccessful" does not amount

10

to ineffective assistance of counsel).

        3. *Actual Innocence*.

In this claim, Petitioner maintains he is actually innocent of his sentence because the weapons were owned legally, not stored anywhere near any illicit drugs, and most importantly, not charged in the indictment. It is his theory that criminalizing his possession of legally-owned firearms meets the criteria for actual innocence under *Schlup v. Delo*, 513 U.S. 298 (1995). Petitioner is wrong on all counts.

First of all, the Court has already found against him with respect to the first set of arguments, i.e., the legality, location, and not-charged-in-the-indictment arguments.

Secondly, the "actual innocence" exception is a narrow exception to the general rules governing the procedural default of claims. *See id.*, at 326-37 (holding a procedural default of a claim is overlooked "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent"). The matter under consideration does not involve a procedural default, but rather whether Petitioner's attorney did or did not give him ineffective assistance at his sentencing.

Third, a petitioner who is claiming actual innocence is contending there is new evidence which shows, due to a constitutional violation, he has been convicted of an offense of which he is innocent. *See Bousley v. United States*, 523 U.S. 614, 622-23 (1998). Petitioner has presented no new evidence of innocence, since the "evidence" he presents in support of his claim existed at the time of his sentencing and, indeed, he maintains he discussed this "evidence" and the issue with his attorney during sentencing. [Doc. 158, Pet'r's Br. at 7].

Additionally, a petitioner claiming actual innocence must show *factual* innocence, not mere legal insufficiency. *Id.* at 624. Petitioner's claim of actual innocence is constructed on the alleged legal insufficiency of his sentence—not on his factual innocence of the charge. *Id.* at 623.

Finally, Petitioner offers no authority for this proposition. In fact, the Supreme Court has never found and has expressly refused to find or even address "the availability and scope of the actual innocence exception in the noncapital sentencing context." *Dretke v. Haley*, 541 U.S. 386, 392 (2004). As did the previous claim, this one too lacks merit.

To sum up, counsel could not have done more for Petitioner than it did and, thus, not only was there no deficiency of performance, there was no resulting prejudice either.

**V.** *Conclusion*

This § 2255 motion fails to show any constitutional error which had a substantial and injurious effect at sentencing. Accordingly, Petitioner is not entitled to relief under § 2255; his motion to vacate, set aside, or correct his sentence will be **DENIED**, and his case will be **DISMISSED**.

**VI**. **Certificate of Appealability**

Petitioner may not appeal a final order in this § 2255 case to the Sixth Circuit unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). The Court must now consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal. Issuance of a COA depends entirely upon whether Petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing jurists of reason would find

the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has individually assessed Petitioner's claims under the relevant standards and finds those claims do not deserve to proceed further because they have no viability in light of the governing law and jurists of reason would not conclude the disposition of those claims was debatable or wrong. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate order will enter.

**ENTER**:

**/s/**  
**CURTIS L. COLLIER**  
**CHIEF UNITED STATES DISTRICT JUDGE**